RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE _____
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

JEROME L. WEATHINGTON,                    CIVIL ACTION
          Plaintiff                       SECTION "P"
                                          1:10-CV-00359
VERSUS

UNITED STATES, et al.,                    JUDGE DEE D. DRELL
          Defendants                      MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a complaint filed pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971),[1] and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, by Jerome L. Weathington ("Weathington") on February 24, 2010 (Doc. 1) and amended on August 13, 2010 (Doc. 5). The named defendants are the United States (FTCA claim) and, in the Bivens claim, Joe Keffer (former warden of the United States Penitentiary in Pollock, Louisiana ("USP-

_____

[1] Bivens defendants are federal officials brought into federal court for violating the Federal Constitution. Bivens-type actions may be brought only against federal agents and not federal agencies. F.D.I.C. v. Meyer, 510 U.S. 471, 486, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994); Whitley v. Hunt, 158 F.3d 882 885 (5th Cir. 1998). Under Bivens, a plaintiff may recover damages for any injuries suffered as a result of federal agents' violations of his constitutional rights. Channer v. Hall, 112 F.3d 214, 216 (5th Cir. 1997).

Pollock")), and R. Lonidier,[2] J. Valdez, Daniel Stevens, William O. Trull, Jr.,[3] and three unknown officers, all employed at USP-Pollock.[4] Weathington alleges that, on January 2, 2009, defendants failed to protect Weathington by intervening and ending an assault on him by another inmate.[5]  Weathington further alleges that, on January 5, 2009, two unnamed officers (Stevens and Trull) assaulted him when he was handcuffed and shackled to his hospital bed at an outside hospital. When he was returned to USP-Pollock, Weathington was placed in an observation cell without a toilet or sink. For relief, Weathington asks for monetary damages and injunctive relief. Weathington is presently confined in the Federal Detention Center in Oakdale, Louisiana.

---

[2] According to defendants motion to dismiss (Doc. 18), "R. Lonidier" is now known as "Regina Brown" (Doc. 18).

[3] Stevens and Trull were John Doe #1 and John Doe #2 (Docs. 14, 16).  Trull's name is misspelled as "Trutt" on the docket sheet.

[4] A "Lt. Transou" was also named as a defendant, but a summons was not prepared for him and he was not served.  Although the Clerk of Court was ordered to prepare the summons, instead of Weathington, Weathington has not complained about the lack of service on Transou.  Therefore, I will recommend that the complaint against Transou be dismissed without prejudice under Fed.R.Civ.P. 4(m).  See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 647 (1994); Systems Signs Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988).

[5] Weathington contends he was charged and convicted in federal court of assault resulting in serious bodily injury and received a disciplinary report with loss of good time credits, as well.  USA v. Weathington, 09-cr-0196 (W.D.La. 2009).

2

The individual defendants named in the <u>Bivens</u> claim filed a motion to dismiss (Doc. 18). The United States also filed a motion to dismiss the FTCA claim (Doc. 19). Weathington filed a response to the motions to dismiss (Doc. 21). The motions are now before the court for disposition.

It is noted that the defendants attached documentary exhibits and affidavits to their motions to dismiss Weathington's claims. Therefore, their motions to dismiss (Docs. 18 & 19) are actually motions for summary judgment, pursuant to Fed.R.Civ.P. rule 12, and will be treated as such by this court.

<u>Law and Analysis</u>

<u>Motion for Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts

3

submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th

4

Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

*BIVENS CLAIMS*

### 1. Exhaustion

Defendants contend Weathington's <u>Bivens</u> claims should be dismissed for failure to exhaust his administrative remedies.

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.   42 U.S.C.   § 1997e(a).   Exhaustion is mandatory, irrespective of the forms of relief sought and offered through administrative remedies. <u>Booth v. Churner</u>, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819 (2001).  The exhaustion requirement of 42 U.S.C. § 1997e applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. <u>Porter v. Nussle</u>, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002).  Resort to a prison grievance process must precede resort to a court. <u>Porter</u>, 534 U.S. at 529, 122 S.Ct. at 990.

Since the amendment of § 1997e, the Fifth Circuit has taken a strict approach to the exhaustion requirement. <u>Days v. Johnson</u>, 322 F.3d 863, 866 (5th Cir. 2003).  In <u>Wright v. Hollingsworth</u>, 260 F.3d 357, 358 (5th Cir. 2001), the court stated that nothing in the PLRA prescribes appropriate grievance procedures or enables judges,

by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems.  On the other hand, the Fifth Circuit has also stated that the exhaustion requirement imposed by amended § 1997e is not jurisdictional.  Wendell v. Asher, 162 F.3d 887, *890 (5th Cir. 1998).   The exhaustion requirement may be subject, in rare instances, to certain defenses such as waiver, estoppel, or equitable tolling.  Wendell, 162 F.3d at 890.We have recognized, as a basis for excuse, circumstances where administrative remedies are inadequate because prison officials have ignored or interfered with a prisoner's pursuit of an administrative remedy.  Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982).   The Fifth Circuit has recognized that exhaustion requirements may be excused where dismissal would be inefficient and would not further the interests of justice or the purposes of the exhaustion requirement.  Johnson v. Ford, 261 Fed.Appx. 752, 755 (5th Cir. 2008).

The administrative remedy procedures which must be followed by a federal prison inmate are set forth in 28 C.F.R. §§ 542.10, et seq.  Those regulations provide for first step of an informal resolution attempt filed with the prison staff, a second step of a formal grievance filed with the warden, and appeals at the third and fourth steps as set forth below in Section 542.15; the third step is an appeal of the warden's decision to the Regional Director, and the fourth step is an appeal of the Regional

Director's decision to the General Counsel.

§ 542.15 Appeals.
(a) Submission. An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in § 542.14(b) of this part. Appeal to the General Counsel is the final administrative appeal.
(b) Form.
(1) Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP-10) and accompanied by one complete copy or duplicate original of the institution Request and response. Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP- 11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses. Appeals shall state specifically the reason for appeal.
(2) An inmate may not raise in an Appeal issues not raised in the lower level filings. An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal.
(3) An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form. If more space is needed, the inmate may use up to one letter-size (8 ½ " x 11") continuation page. The inmate shall provide two additional copies of any continuation page and exhibits with the regional Appeal, and three additional copies with an Appeal to the Central Office (the inmate is also to provide copies of exhibits used at the prior level(s) of appeal). The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal (see 28 CFR part 503 for addresses of the Central Office and Regional Offices).

Defendants submitted an affidavit by Jennifer Hanson, a BOP

attorney (Doc. 18-4), to show Weathington failed to exhaust his administrative remedies with the BOP. Hanson stated in her affidavit (Doc. 18-4) that Weathington's administrative remedy request dated January 12, 2009, concerning his claim that BOP officers failed to protect him from an assault, was rejected on January 12, 2009 for failure to attempt to informally resolve the matter or provide evidence that he had done so. Hanson further states in her affidavit that Weathington never filed anything further on that claim.

Weathington submitted exhibits with his complaint which contradict Hansen's affidavit and show he filed an informal resolution attempt which was rejected on January 14, 2009 (Doc. 1, p. 5/69). On February 1, 2009, Weathington then filed a BP-9 requesting damages on the failure to protect claim, as well as for other claims including the alleged January 5, 2009 assault by BOP officers (Doc. 1, pp. 7-12/69). The warden responded to the BP-9 on February 17, 2009, stating the complaint regarding the assault by staff had been referred to "appropriate authorities for proper review and disposition" (Doc. 1, p. 13/69).

On June 31, 2009, Weathington filed a claim under the Federal Tort Claims Act regarding his claims for failure to protect and assault by BOP staff (Doc. 1, p. 14-19/69). On September 2, 2009, Weathington's tort claim was denied (Doc. 1, pp. 3-4/69). On January 24, 2010, Weathington's tort claim for failure to protect

8

was again denied.

It appears that Weathington attempted to exhaust his administrative remedies, but his BP-9 grievance was sent elsewhere, to "appropriate authorities," for review. No response on the merits of Weathington's BP-9 is reflected in the record before this court. Indeed, according to Hansen's affidavit, the BOP records do not include Weathington's informal resolution attempt and the BOP's response to it or Weathington's BP-9 and the BOP's the response to it.

In his response to defendant's motion (Doc. 21), Weathington states that he was told he had to file a tort claim instead of administrative remedies, so he stopped pursuing his administrative remedies. In fact, Warden Keffer's response to Weathington's BP-9 states that an administrative remedy is not the proper documentation to file to request monetary compensation, and that he "must complete an administrative tort claim form and file it with the South Central Regional Office" (Doc. 1, p. 13/69).

Defendants allege Weathington failed to pursue exhaustion of his Bivens after he was told he must attempt informal resolution, but Weathington showed he attempted informal resolution and then filed a BP-9 which was forwarded to the "proper authorities" for review but never answered again. Weathington also argues he was told by BOP officials that, since he was asking for money, he must pursue a tort claim instead of a Bivens claim, and Weathington

9

followed that instruction.  Therefore, there are genuine issues of material fact as to whether defendants should be estopped from claiming exhaustion as to Weathington's <u>Bivens</u> claims[6] which preclude a summary judgment on this issue, and defendants' motion should be denied on the issue of exhaustion of the <u>Bivens</u> claims.

## 2. Heck Defense to Bivens Claims

Next, defendants contend Weathington's <u>Bivens</u> claims are barred by <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct. 2364 (1994), because his claims implicate the validity of Weathington's conviction for assault on Anthony Ater.

In order to recover damages for an allegedly unconstitutional conviction or imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 or <u>Bivens</u> plaintiff must prove the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983 or <u>Bivens</u>.  Rather than engrafting an exhaustion requirement on §1983 or <u>Bivens</u>, the Supreme Court has held the plaintiff has no cause of

---

[6] Estoppel may provide a basis for excusing a prisoner's failure to exhaust administrative remedies.  <u>Dillon v. Rogers</u>, 596 F.3d 260, 270 (5th Cir. 2010), and cases cited therein.

10

action under §1983 or Bivens, regardless of exhaustion, unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. A § 1983 action or Bivens action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated. Boyd v. Biggers, 31 F.3d 279, 282 (5th Cir. 1994), citing Heck. Also, McGrew v. Texas Bd. of Pardons, 47 F.3d 158, 161 (5th Cir. 1995); Arvie v. Broussard, 42 F.3d 249, 250 (5th Cir. 1994).

Weathington contends (and the court records show) he was convicted of an assault on Anthony Ater; Weathington was not charged with or convicted of assaulting Liggins. U.S. v. Weathington, 1:09-cv-00196 (W.D.La. 2006).[7] Weathington contends Terry Liggins is another inmate who participated in the incident between Weathington and Ater; Weathington alleges that Liggins stabbed him and, as a result of the BOP officers' failure to intervene, Weathington was stabbed more than 20 times. Weathington argues this Bivens and FTCA action concerns the BOP officials' failure to intervene and protect him from the assault by Terry Liggins and, therefore, the validity of his conviction for assault on Ater is not implicated.

Since Weathington's Bivens suit concerns Liggins' assault on him and does not implicate his conviction for assault on Ater,

_____

[7] An appeal is currently pending in that case.

11

Weathington's suit does not violate <u>Heck</u> and defendants' motion for summary judgment on this ground should be denied.

### 3. Respondeat Superior

Defendants next argue that, since Warden Keffer was not present during the January 2, 2009 assault, and was not at the hospital on January 5, 2009, he has been sued in his supervisory capacity only and, therefore, Weathington's action against him should be dismissed.

The doctrine of respondeat superior, which makes an employer or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983 or <u>Bivens</u>.  <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987).  Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions.  Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury.  <u>Mouille v. City of Live Oak, Tex.</u>, 977 F.2d 924, 929 (5th Cir. 1992), <u>cert. den.</u>, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); <u>Thompkins</u>, 828 F.2d at 303.

In the case at bar, Weathington contends he had requested protection and was being held in the segregated housing unit ("SHU") in order to protect him from gangs.  Weathington further contends that Liggins, a gang member, was a general population

inmate who had been allowed into the SHU contrary to national policy, SHU Program Statement 5270, as well as the Code of Federal Regulations, but in accordance with a practice or policy implemented by Warden Keffer.

The court takes judicial notice (from the evidence filed in another case against the BOP[8]) of a policy memo posted in USP-Pollock by Warden Keffer:

January 8, 2008

**MEMORANDUM FOR ALL STAFF AND INMATES**

FROM:     Joe Keffer, Warden

SUBJECT:  Inmate Expectations; Rules

The purpose of this memorandum is to serve as a reminder to all inmates of some basic rules and regulations which must be followed.  I believe most inmates want to live in an institution where they can work and program without having to worry about being victimized or having their daily activities disrupted.  Unfortunately, there are some inmates who continue to engage in behavior which negatively impacts everyone.  These behaviors include assaults with weapons as well as destroying equipment and appliances meant for use by everyone.  Consequently, these types of behaviors cannot be tolerated.

In order to ensure everyone clearly understands my expectations, the following is a list of rules which, beginning immediately, will be enforced without question. These rules are not new, however, they have not been followed to my standards and greater restrictions appear to be necessary.  Please read and familiarize yourself with these regulations.  Your compliance with each of them is mandatory and there will be zero tolerance for anything less.

---

[8] <u>Schreane v. Keffer</u>, 2010 wl 4068782 (W.D.La. 2010), R&R adopted, 2010 wl 4068773 (W.D.La. 2010).

INMATE EXPECTATIONS/RULES
**********

- Inmates are not allowed in any housing unit other than the one to which they are assigned."

The purpose behind the policy, of reducing inmate assaults and other misconduct, is stated and apparent. See <u>Rose v. Carey</u>, 2008 wl 4443229, *5 (S.D.Ind. 2008)("Prisons are dangerous places, and require rigorous security measures to insure inmate and staff safety. Restricting inmate movement, and knowing where inmates are at any point in time, are integral components of providing for inmate and staff security."). According to the Bureau of Prisons' website,[9] USP-Pollock is a high security institution.

According to Weathington, Liggins was allowed into the SHU against national BOP policy. According to the evidence, of which the undersigned takes judicial notice, that policy had been posted by Warden Keffer for both the inmates and the prison officers to see, with a notice of stricter enforcement, the previous year. Therefore, Warden Keffer clearly did not promulgate a policy, custom or practice which allowed inmates to enter housing units to which they were not assigned.

Since Warden Keffer is not liable in a <u>Bivens</u> suit for the torts committed by BOP officers working under him, there are no genuine issues of material fact which would preclude a summary judgment. A summary judgment should be granted in favor of Warden

---

[9] See http://www.bop.gov/locations/institutions/pol/index.jsp.

14

Keffer, dismissing Weathington's <u>Bivens</u> claims against him.

### 4. Qualified Immunity

A. The Law as to Qualified Immunity

The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. <u>Woods v. Smith</u>, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996). Qualified immunity cloaks a law enforcement officer from personal liability for discretionary acts which do not violate well established law. Officers have qualified immunity if their actions could reasonably have been thought consistent with the right they are alleged to have violated. <u>Richardson v. Oldham</u>, 12 F.3d 1373, 1380-81 (5th Cir. 1994), and cases cited therein. Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful. <u>Hope v. Pelzer</u>, 536 U.S. 730, 122 S.Ct. 2508, 2515 (2002).

Invocation of the qualified immunity defense shifts the burdens of proof in federal civil rights (or <u>Bivens</u>) lawsuits brought against public officials for actions or omissions attending their performance of official duties:

> "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this

15

defense by establishing that the official's allegedly wrongful conduct violated clearly established law."

Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001), citing Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992).

The bifurcated test for qualified immunity is: (1) whether the plaintiff has alleged a violation of a clearly established constitutional rights; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident.  Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998), and cases cited therein.

The first step is to determine whether the plaintiff has alleged violation of a clearly established constitutional right. This analysis is made under the currently applicable constitutional standards.  Hare, 135 F.3d at 325.  A constitutional right is clearly established if, in light of pre-existing law, the unlawfulness is apparent.  Officials must observe general, well-developed legal principles.  Doe v. Taylor Independent School Dist., 15 F.3d 443, 445 (5th Cir.), cert. den., 513 U.S. 815, 115 S.Ct. 70 (1994).  Prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1976-1977 (1994). Therefore, Weathington has alleged the violation of a constitutional right that was clearly established in 2009.

16

Under the second prong of the qualified immunity test, the court must determine whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law. <u>Hare</u>, 135 F.3d at 325-36. Objective reasonableness is a question of law for the court. The analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits). For qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident and, under that standard (the minimum standard not to be deliberately indifferent), the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable. <u>Hare</u>, 135 F.3d at 328.

The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiff, regardless of the objective state of the law at the time of his conduct. <u>Douthit v. Jones</u>, 619 F.2d 527, 533 (5th Cir. 1980). A party seeking to avoid a qualified immunity defense must prove that the official either actually intended to do harm to him, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result. <u>Douthit</u>, 619 F.2d at 533.

<u>B. The Eighth Amendment Right to Safety</u>

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. Farmer, 114 S.Ct. at 1976-77.

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. Farmer, 114 S.Ct. at 1978. Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. It is insufficient to show solely that the official should have known of the risk. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. Farmer, 114 S.Ct. at 1979.

18

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety. Farmer, 114 S.Ct. at 1981-82. Also, Hinojosa v. Johnson, 277 Fed.Appx. 370, 374 (5th Cir. 2008). However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. Farmer, 114 S.Ct. at 1982-83.

The failure of a prisoner to give any advance notice to prison officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite. Farmer, 114 S.Ct. at 1984-1985.

A prison guard has a duty to intervene and attempt to end an assault on an inmate. Buckner v. Hollins, 983 F.2d 119, 122 (8th Cir. 1993). Also, Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995), citing Smith v. Dooley, 591 F.Supp. 1157, 1169 (W.D.La. 1984), aff'd, 778 F.2d 788 (5th Cir. 1985). The Eighth Amendment imposes the requirement on prison officials to restore control in

tumultuous situations, but officials who fail to prevent an injury inflicted by fellow prisoners are liable only where those officials possess the requisite mental state.  The requisite mental state in situations where prison officials do not respond with the physical use of force is that of deliberate indifference.  <u>MacKay v. Farnsworth</u>, 48 F.3d 491 (10th Cir. 1995).

A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault. However, a correctional officer's failure to intervene in an inmate fight does not constitute an Eighth Amendment violation if there is evidence justifying the correctional officer's failure to intervene, such as when intervention would threaten the health and safety of all concerned (i.e. the guard is alone and unarmed or another guard has been taken hostage).  <u>Williams v. Mueller</u>, 13 F.3d 1214, 1215-16 (8th Cir. 1994), and cases cited therein.

Therefore, the law as to inmate safety was well-established at the time of the January 2009 assaults involved in this case.

C. Weathington's Failure to Protect Claim

Defendants argue they are entitled to qualified immunity on Weathington's claim that they failed to protect him from an assault by Terry Liggins.  Defendants argue they had no idea that Liggins was an enemy of Weathington's or that there was a risk that Liggins would attack Weathington.  Weathington contends that Valdez stood

by and Lonidier (Brown) began locking down the other inmates while Weathington was stabbed being by Liggins and Ater.

Weathington alleges Liggins is a member of the gang from which he requested protection and, because of that request, he was placed in the SHU for protection.  Therefore, defendants were apparently aware that Weathington was at risk of attack by members of that gang.

Moreover, although defendants argue they did not know Weathington was at risk of an assault, that argument really does not address Weathington's claim.  Weathington complains not only that Liggins was allowed to enter the SHU, a unit to which Liggins was not assigned, but that, after Liggins began stabbing him, defendants just stood by an watched and did not nothing to end the assault.  As a result, Liggins was able to stab Weathington more than 20 times before he finally got up and left.

Defendants also postulate that Weathington "set the fight up" in order to give the BOP a reason to transfer him to another prison; Weathington had already requested a prison transfer. However, not only have defendants not offered any proof to support that specious hypothesis, but it is countered by the facts that Weathington had requested and received protection against an attack by the gang to which Liggins belongs, as well as the fact that he was stabbed over 20 times, receiving life-threatening injuries including a punctured lung (Doc. 1-2), as well as by Weathington's

21

allegation that Liggins, a general population inmate who was not housed in the SHU, was present in the SHU with a weapon in violation of BOP and USP-Pollock policy.

The court also takes judicial notice of the testimony at Weathington's trial for assaulting Ater.  <u>U.S. v. Weathington</u>, 1:09-CR-00196.

At that trial, Joseph Valdez, the service officer specialist and officer in charge of the B-1 Unit on the date of the assault, testified there are typically up to 132 inmates and two unarmed guards on duty in B-1; Valdez also testified that he did not see which of the three inmates (Weathington, Liggins, and Ater) initiated the assault, but all three inmates had weapons and were using them (Doc. 48, pp. 137-138, 141-142).  Valdez further testified that, after he called in the fight, he yelled at the inmates to stop and put their weapons down (Doc. 48, p. 143). Valdez testified that no one broke up the fight because there was not enough staff to do so (Doc. 48, p. 146).  Valdez testified that, after the fight, when Weathington stripped his clothes off, he saw Weathington was wearing armor made of food trays under his clothes (Doc. 48, Tr. pp. 146-147).

Regina Brown (formerly Lonidier), a correctional officer at USP-Pollock working in B-1 with Valdez on the day of the assault, testified that Liggins did not reside in the B-1 unit, but was there that day working as an orderly/janitor (Doc. 48, Tr. pp. 164-

22

166). Brown testified that she did not see who started the assault, she told the inmates to stop fighting and then waited for more staff to arrive because the inmates were armed and she was not (Tr. pp. 167-168). Brown testified the shanks were make from pieces of bunkbeds and that Weathington had a sock stuffed with pieces of porcelain from a sink or toilet (Doc. 48, Tr. pp. 171-172). Correctional Supervisor Bauserman testified that Weathington had a netted laundry bag, plastic food lids, and food trays under his clothes (Doc. 48, Tr. p. 179-181). The treating physician, Dr. Philip Lindsay, testified that Ater and Weathington each had numerous superficial wounds and each had one deep wound and a collapsed lung (Tr. pp. 153-162).

Weathington testified at his assault trial that he was serving a sentence for armed robbery in 2007; that was his only felony conviction (Tr. pp. 196-197). Weathington was incarcerated in the federal penitentiary in Allenwood, Pennsylvania, where he was attacked, while he was playing basketball, by members of a DC/Baltimore area gang and stabbed four times (Doc. 48, Tr. p. 197). Weathington was then transferred to the federal penitentiary in Beaumont, Texas, where, within three weeks, he was jumped and beaten in his cell by two guys who were friends of the guys who had stabbed him in Pennsylvania (Doc. 48, Tr. p. 198). Weathington was then transferred to USP-Pollock in March 2008 (Doc. 48, Tr. p. 199). Weathington popped the shower head and broke the toilet in

his cell because he was denied recreation; cells below him were
flooded, which made several inmates angry at Weathington (Doc. 48,
Tr. p. 199). Two inmates (one from DC, but neither was Liggins or
Ater)) told Weathington they were going to stab him because he
flooded their cells (Doc. 48, Tr. p. 219). Weathington had already
requested protective custody due to fear of attack by DC inmates
and had been place in the SHU for three months, then moved to B-1,
a SHU holdover unit (Doc. 48, Tr. p. 200-203, 219, 221).
Weathington testified that, after the other inmates threatened him,
he did not tell the corrections officers, but he took lids from the
food trays to wear as armor and prepared the sock (with pieces of
the broken toilet in it) to protect himself (Doc. 48, Tr. pp. 204-
205, 218, 220).

    Weathington testified that, on the day of the assault, when he
got to the floor of the rec area, Liggins, the orderly, called him
to the steps so he and Ater could talk to him (Doc. 48, Tr. pp.
205-206); Weathington testified that both Liggins and Ater were
from DC (Doc. 48, Tr. p. 206). Weathington testified that he
walked over to Ater and began talking to him, but when he saw Ater
begin to reach for his knife (Weathington had seen Ater get a knife
and put it in his pocket), Weathington swung his sock at him and
Ater stabbed Weathington in the face (Doc. 48, Tr. pp. 206-207).
Weathington testified that, later in the fight, he grabbed a knife
that Ater threw at him, cutting his hand in the process; he did not

have a knife when the fight started (Doc. 48, Tr. pp. 210-211, 213).  Both Liggins and Ater stabbed at Weathington, but some of the blows struck his armor; Ater also bit Weathington's face (Doc. 48, Tr. p. 210).

As already discussed, Weathington's failure to inform the officers of the threat made against him by two inmates whose cells were flooded by Weathington's activities is not dispositive of the issues herein, particularly since those inmates did not attack him. Weathington was already in the SHU for protective custody, so there was always the possibility of an attack on him.  Therefore, every officer in the SHU knew or should have known Weathington could be attacked.

The officers who witnessed the attack, Valdez and Brown (Lonidier), testified they were the only two guards assigned to the unit, they were unarmed, and they called and had to wait for additional officers to arrive to stop the fight; therefore, their failure to intervene was justified.  Since there are no genuine issues of material fact which would preclude a summary judgment, Valdez is entitled to qualified immunity, his motion for summary judgment should be granted, and Weathington's <u>Bivens</u> action against Valdez and Lonidier/Brown for failing to intervene to stop the attack should be dismissed.

<u>D. Weathington's Excessive Force Claim</u>

Defendants argue that they are entitled to a summary judgment

because the use of force on Weathington by the guards, Trull and Stevens, at the hospital was not excessive. Weathington contends that, while he was handcuffed and shackled in the hospital bed, Trull and Stevens punched him threw milk on him, and took his food. Weathington contends they caused him to be discharged from the hospital early.

To prevail on an eighth amendment excessive force claim, a plaintiff must establish that force was not applied in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm, and that he suffered an injury. <u>Eason v. Holt</u>, 73 F.3d 600, 602 (5th Cir. 1996).

The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. <u>LeBlanc v. Foti</u>, 487 F. Supp. 272, 275 (E.D.La. 1980), citing <u>Johnson v.</u>

Glick, 481 F.2d 1028 (2d Cir. 1973), cert. den., 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973).

The law of the Fifth Circuit is that to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force more than de minimis physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor. Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999). However, the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. The absence of serious injury, while relevant to the inquiry, does not preclude relief. Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997).

Trull and Stevens state in their affidavits (Doc. 19), that they was assigned as hospital officer on January 5, 2009. Trull and Stevens state in their affidavits that, when they went on duty at 8:00 a.m., they found Weathington agitated and had already thrown water at the hospital staff, then Weathington yelled at Trull and Stevens that he was supposed to receive two breakfast trays instead of just one and threw his food at them (his left hand was not restrained, so he could eat) (Doc. 19). Stevens states he then told Weathington he was going to be placed in full restraints (Doc. 19). Trull and Stevens state in their affidavits that

Weathington then tried to get out of the hospital bed, and tried to spit at, bite, hit and kick them (Doc. 19).   Trull and Stevens state in their affidavits that Weathington is 6'6" tall and weighs about 240 pounds (Doc. 19).   Trull and Stevens deny punching or injuring Weathington, but admits additional officers and force were required to subdue and restrain Weathington (Doc. 19).

Weathington claims Trull and Stevens are lying in their affidavits, and that he could not have gotten out of the bed even if he had tried because he was having difficulty breathing (Doc. 21).   Weathington contends that, while he was blocking punches with his left hand, one of the officers dropped his cell phone, then they all walked out of the room; Weathington claims he then called his stepfather, which the phone records will prove.

Weathington has never claimed the officers injured him and there is no evidence that he suffered an injury due to his altercation with the officers.   Even without determining whether Weathington misbehaved and whether the officers overreacted, it is clear that there are no genuine issues of material fact as to the fact that Weathington was not injured.   Therefore, Weathington does not have a claim for use of excessive force, Trull and Stevens are entitled to qualified immunity, defendants' motion for summary judgment should be granted, and Weathington's <u>Bivens</u> claim against Trull and Stevens for the use of excessive force should be dismissed with prejudice.

*FTCA CLAIMS*

### 1. Punitive Damages Under the FTCA

First, defendant contends it cannot be liable for punitive damages (which Weathington has requested) under the FTCA.

Although punitive damages may be awarded in a Bivens suit, Bivens, 403 U.S. at 397, 91 S.Ct. at 2005, they are statutorily prohibited in an FTCA action, 28 U.S.C. § 2674, Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468 (1980). Therefore, to whatever extent that Weathington has asked for punitive damages for his FTCA claim, an award of such damages is precluded. Weathington's request for punitive damages under the FTCA should be dismissed.

### 2. Physical Injury

Next, defendant contends that, since damages may not be awarded for mental or emotional injury suffered while in custody without a prior showing of physical injury, under both 28 U.S.C. 1346 and 42 U.S.C. 1997e, physical injury is thus a jurisdictional prerequisite in both Bivens and FTCA cases.

Defendant's comparison and analysis via Bivens and Section 1983 is puzzling. The FTCA applies substantive state law to tort claims, not federal laws such as civil rights law.[10] Therefore,

---

[10] Under the FTCA, a plaintiff may recover monetary awards from the United States for injury, property loss, or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of employment. The United States may be held liable only if the conduct complained of amounts to negligence in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b).

defendants argument has no basis in law.[11]

Accordingly, Weathington's tort claims must be evaluated in accordance with Louisiana tort law.  Under Louisiana tort law, a physical injury is not a necessary corequisite for claiming damages for an emotional injury.  See La.C.C. arts. 2315, et. seq. Therefore, the United State's motion for summary judgment on this basis should be denied.

### 3. Heck Defense

Defendant also argues that Heck should apply to bar Weathington's FTCA claims.  However, as discussed above, Weathington's Bivens and FTCA suits for failure to protect him from assault by Liggins do not affect his conviction for assault on

---

Substantive state law determines whether a cause of action exists.  Johnston v. U.S., 85 F.3d 217, 219 (5th Cir. 1996).

To prevail on a negligence claim under La. Civil Code arts. 2315 and 2316, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element).  Brown v. Lee, 94-CA-104 (La.App. 5 Cir. 7/13/94), 639 So.2d 897, 898-899, writ den., 94-2127 (La. 11/18/94), 646 So.2d 378, citing Roberts v. Benoit, 605 So.2d 1032 (La. 1991); Fowler v. Roberts, 556 So.2d 1, 4 (La. 1989); Scott v. State, 618 So.2d 1053 (La. App. 1st Cir.), writ den., 620 So.2d 881 (La. 1993). Also, La.C.C. art. 2315.

[11] Defendant cites Section 1983 cases for the proposition that physical injury is a jurisdictional prerequisite in both Bivens and FTCA cases.  Again, those cases are not applicable to FTCA cases.

Ater.   Therefore, this argument is meritless.

> 4. Assault/Battery Claim Under the FTCA

Defendant also contends Weathington has not stated a claim for assault/battery.

The intentional tort exception to the waiver of sovereign immunity applies to FTCA claims for assault/battery by a prison guard who was *not* acting in a law enforcement capacity at the time (for example, making an arrest or investigating something).[12]  See Devillier v. U.S., 2010 WL 476722, *3 (W.D.La. 2010), citing Castro v. U.S., 560 F.3d 381 (5th Cir. 2009), on reh'g, 608 F.3d 266 (5th Cir. 2010), cert. den., 131 S.Ct. 902 (U.S. 2011).   Since Weathington alleges the guards punched him (in retaliation for his having thrown his food tray at them) when he was in the hospital, they clearly were acting as prison security officers at that time and not in a law enforcement/investigative capacity.   Therefore, Weathington's FTCA claim for assault/battery by the guards when he

---

[12] The intentional tort exception to the waiver of sovereign immunity set forth in 28 U.S.C. § 2680(h) is limited by the "law enforcement proviso," which relinquishes sovereign immunity against claims arising out of torts enumerated  in Section 2680(h) (including assault and battery) if the claim resulted from the act or omission of a federal investigative or law enforcement officer.  See Sutton v. U.S., 819 F.2d 1289 (5th Cir. 1987).  BOP employees are considered law enforcement officers for purposes of Section 2680(h) if they are acting within the scope of law enforcement functions (as opposed to security functions) at the time the tort is committed.  Castro, 560 F.3d at 387. Therefore, had the prison guards in the case at bar been acting in a law enforcement capacity at the time that Weathington alleges they punched him, the law enforcement exception to sovereign immunity would apply.

was in the hospital should be dismissed as barred by sovereign immunity.

Therefore, defendant's motion for summary judgment to dismiss Weathington's FTCA claim for assault/battery should be granted and its motion for summary judgment as to Weathington's FTCA claim for failure to protect should be denied.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Weathington's complaint against Lt. Transou BE DISMISSED WITHOUT PREJUDICE pursuant to Fed.R.Civ.P. 4(m).

IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment on the Bivens claims be GRANTED and that Weathington's Bivens claims against Warden Keffer, Valdez, Lonidier (now Brown), Trull, and Stevens be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the United States' motion for summary judgment be GRANTED and Weathington's request for punitive damages under the FTCA be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the United States' motion for summary judgment as to Weathington's FTCA claim for assault/battery be GRANTED and Weathington's FTCA claim for assault/battery be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the United States' motion for summary judgment as to Weathington's FTCA claim for failure to protect be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 3 day of March, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE